LEON FORNEL, *Plaintiff in Error,* v. FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Defendant in Error.*

Opinion Filed Feb. 4, 1913.

1. A shipment of property cannot be regarded and treated as both intra-state and inter-state. It must be deemed and held to be one or the other. It is improper, in an action brought by the shipper against the railroad company, seeking to recover damages occasioned by the unreasonable delay by the defendant in transporting the same, to include counts in the declaration, treating such shipment in each aspect.

2. In an action against a railroad company, seeking to recover damages alleged to have been occasioned by the unreasonable delay by the defendant in transporting a carload of tomatoes which had been entrusted to it for shipment, where it clearly appears from the declaration that such shipment was inter-state and that such action is based on what is generally known as the Carmack amendment to the Hepburn Act, being Section 20, as amended by the Act of June 29, 1906, 34 Statutes at Large, 584, then Chapter 5618 of the Laws of Florida, has no applicability, being confined to intra-state shipments, and a motion is properly granted striking from the counts in the declaration certain portions thereof which seek to recover interest and attorney's fees under the provisions of such Chapter 5618 of the Laws of Florida, Acts of 1907, page 101.

3. Rule XIX, adopted by the State Railroad Commission, relating to demurrage, has no applicability to inter-state shipments, but must be confined to intra-state shipments.

4. It is error to sustain a demurrer to a declaration which states a cause of action against the defendant.

Writ of Error to the Circuit Court for Dade County.

Judgment reversed.

*Hudson & Boggs,* for Plaintiff in Error.

*Shutts, Smith & Bowen,* for Defendant in Error.

SHACKLEFORD, C. J.—Leon Fornel brought an action at law against the Florida East Coast Railway Company, a corporation, wherein he sought to recover damages, alleged to have been occasioned by the unreasonable delay by the defendant in transporting six carloads of tomatoes which had been entrusted to it for shipment. The plaintiff's original declaration is not set out in the transcript and no error is assigned upon any ruling which may have been made relating thereto. An amended declaration was filed containing twelve counts, to which a demurrer was interposed and sustained, as was likewise a motion to strike certain portions of certain counts. A second amended declaration was then filed, the first and second counts of which are as follows:

"Leon Fornel, of Dade County in the State of Florida, by Hudson & Boggs, his attorneys, sues the Florida East Coast Railway Company, a corporation organized and existing under the laws of the State of Florida, and for cause shows:

That the said defendant heretofore to-wit, at the time of the grievances hereinafter to be mentioned was and thence hitherto hath been a common carrier of freight and passengers for hire, operating a line of railroad from a certain station to-wit, Lemon City in the State of Florida to another certain station to-wit, Jacksonville in the State of Florida, and while the defendant was such common carrier, the plaintiff and one L. E. Filer then co-partners doing business as Filer & Fornel, on to-wit, the 13th day of March, 1911, at Lemon City aforesaid caused to be delivered to defendant and the defendant did

then and there receive from the plaintiff and said Filer in good order, certain perishable goods of the plaintiff and said Filer, to-wit, a certain carload of tomatoes comprising five hundred crates of tomatoes of the value, to-wit, of Six Hundred and Fifteen ($615) Dollars, to be carried with all proper speed and care by defendant from Lemon City aforesaid to Jacksonville, aforesaid, and to be there promptly and safely delivered to connecting carriers for further transportation to Chicago in the State of Illinois, and there delivered to certain consignees, to-wit, Crutchfield, Woolfork & Cleve, and said consignees had theretofore contracted and agreed to purchase the said goods from plaintiff provided they should be delivered promptly and in good order at Chicago aforesaid, and to pay plaintiff therefor, the sum of Six Hundred and Fifteen ($615) Dollars, as well as the freight charges thereon, but the defendant did not carry the said goods with proper speed and care to the said City of Jacksonville, nor there deliver them to connecting carriers with safety and despatch, but on the contrary thereof, transported the same with such slowness and unreasonable delay that because of such delay and negligence of said defendant in transporting said goods to Jacksonville aforesaid, said tomatoes did not reach the said City of Chicago until the 24th. day of March, 1911, though about six days is the usual time for such shipment, and said tomatoes were by defendant's delay aforesaid greatly damaged and caused to reach the said City of Chicago in an over-ripe and decaying condition so that the same were refused by consignees and were sold for plaintiff's account at a loss to-wit, for the sum of Three Hundred Sixty-seven and 50/100 ($367.50) Dollars. And defendant well knew that said tomatoes were perishable

and liable to damage, if not promptly and speedily carried and transported.

And thereafter to-wit, on the 29th day of April, 1911, the said firm of Filer & Fornel was dissolved and plaintiff purchased and succeeded to the business of said firm and was at the time of the bringing of this suit, the sole owner of its assets, and on the 27th. day of April, 1911, the said firm of Filer & Fornel filed their claim with the defendant in the sum of Two Hundred Forty-seven and 50/100 ($247.50) Dollars for the loss and damage caused by defendant's negligence and delays as aforesaid, and defendant refused to pay the same, whereby the said plaintiff became and is entitled to interest on the amount of the claim at the rate of 50% per annum from said date, and also to a reasonable attorney's fee as provided by law.

## Second Count.

And plaintiff sues defendant also for this, that the said defendant heretofore to-wit, at the time of the grievances hereinafter to be mentioned, was and thence hitherto hath been a common carrier of freight and passengers for hire, operating a line of railroad from a certain station, to-wit, Lemon City in the State of Florida, to the City of Jacksonville, Florida. And while the defendant was such common carrier, plaintiffs a co-partnership, on to-wit, the 13th. day of March, 1911, at Lemon City in Dade County, Florida, caused to be delivered to defendant, and defendand then and there received from plaintiff in good order certain perishable goods of plaintiff, to-wit, a certain carload of tomatoes comprising five hundred (500) crates of tomatoes and of to-wit the value of Six Hundred Fifteen ($615) Dollars, to be carried with all proper speed and care by defendant and its connecting carriers

from Lemon City aforesaid to Chicago in the State of Illinois, and there delivered to certain consignees, to-wit, Crutchfield, Woodfork & Cleve, and said consignees had theretofore agreed to purchase said goods, provided they should be delivered in good order and condition at Chicago and to pay plaintiff the sum of Six Hundred and Fifteen ($615) Dollars therefor, as well as the freight charges thereon, but defendant and its connecting carriers did not carry the said goods with proper speed and care to said City of Chicago, but on the contrary thereof, transported the same with such great and unreasonable delay, that because of such delay and negligence of the defendant and its connecting carriers, said goods did not reach Chicago until, to-wit, the 24th. day of March, 1911, though about six days is the usual time for such shipment, and became and were on arrival in said City of Chicago in an over-ripe and decaying condition by reason of said delay and negligence of defendant and its connecting carriers, so that said goods were refused by consignees and were necessarily sold for account of said Filer & Fornel at a great loss of to-wit, Three Hundred Sixty-seven and 50/100 ($367.50) Dollars. And said defendant and its connecting carriers well knew that said tomatoes were perishable and were liable to damage if not promptly and speedily carried to destination.

And that after, to-wit, on the 29th. day of April, 1911, the said firm of Filer & Fornel was dissolved and plaintiff purchased and succeeded to the business of said firm and was at the time of the bringing of this suit, the sole owner of its assets and on the 27th. day of April, 1911, the said firm of Filer & Fornel filed their claim with the defendant in the sum of Three Hundred Sixty-seven and 50/100 ($367.50) Dollars, for the loss and damage caused by

defendant's negligence and delay as aforesaid, but defendant refused to pay the same, or any part thereof."

The third, fifth, seventh, ninth and eleventh counts are similar to the first, but have to do with separate carload shipments, while the fourth, sixth, eighth, tenth and twelfth counts are similar to the second. The defendant renewed its original demurrer, as also its motion to strike which the court again sustained. The plaintiff declined to plead further, whereupon the court rendered final judgment in favor of the defendant, which judgment the plaintiff has brought here for review by writ of error. Errors are assigned upon the respective rulings by the court in sustaining the demurrer to the first and second amended declarations and the motions to strike certain portions of certain counts of each of such declarations.

We shall first consider the assignment based upon the ruling granting the motion to strike. This motion was directed against those portions of the odd numbered counts of the declaration which seek to recover interest and attorney's fees under the provisions of Chapter 5618 of the Laws of Florida, Acts of 1907, page 101. The plaintiff frankly admits in his brief that each one of the six carload shipments is treated in two aspects in the declaration; the odd-numbered counts allege such shipments to have been intra-state and are based on such Chapter 5618, while the even-numbered counts alleged the shipments to have been inter-state and are based on what is generally known as the Carmack amendment to the Hepburn Act, being section 20, as amended by the Act of June 29, 1906, 34 Statutes at Large, 584. We copy that portion of such Section 20 which is material here and which is as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a

point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

Can the same shipment be regarded and treated as both intra-state and inter-state? We do not think so. It must be deemed and held to be one or the other. We think that the declaration clearly shows upon its face that all the shipments were inter-State, and this conclusion is strengthened by the admissions in the brief of counsel for the plaintiff in error. Any doubt which we might have entertained upon the subject is removed by the holding and reasoning of the U. S. Supreme Court in Texas & New Orleans R. R. Co., v. Sabine Tram Co., decided on the 27th. day of January, 1913. Being inter-State shipments, we are of the opinion that Chapter 5618 of the Laws of Florida, even if the same be constitutional, as

to which there is a difference of opinion among the members of the court, as a reference to Atlantic Coast Line R. R. Co., v. Coachman, 59 Fla. 130, 52 South. Rep. 377, 20 Ann. Cas. 1047, will disclose, has no applicability, and that it must be confined to intra-State shipments. Adams Express Co. v. Croninger,—U. S.—33 Sup. Ct., Rep. 148, decided on the 6th of January, 1913, which passes directly upon that portion of Section 20 which we have copied above, would seem to have conclusively settled the point. As was said therein:

"To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon State regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been therefore subject."

Also see the other decisions of the U. S. Court therein cited. We think that the allegations in the declaration in the instant case differentiate it from Atlantic Coast Line R. R. Co., v. Mazursky, 216 U. S. 122. It necessarily follows from what we have said that we think that the motion to strike was properly granted.

We now turn to the consideration of the ruling on the demurrer. We do not copy the grounds of the demurrer because we do not consider it necessary. The respective counsel have presented a number of interesting questions in their briefs upon which they ask us to pass, but it

seems to us that the sole point with which we are called upon to deal is as to whether or not the declaration states a cause of action against the defendant. As to whether or not we can and should take judicial notice of Rule XIX adopted by the State Railroad Commission, relating to demurrage, is a matter of no moment in the instant case, as it cannot be held applicable to inter-State shipments, for the reasons already stated. We are of the opinion that the declaration does state a cause of action against the defendant and that the trial court erred in sustaining the demurrer to the declaration. The judgment must be reversed and the cause remanded with directions to over-rule the demurrer. If the plaintiff desires to amend his declaration by striking out or reforming the counts to which the motion to strike was sustained as to certain portions, he should be permitted to do so.

Judgment reversed.

TAYLOR, COCKRELL, HOCKER and WHITFIELD, J. J., concur.