359 So.2d 516 (1978)
ANTILLEAN MARINE SHIPPING CORPORATION, Appellant,
v.
LA UNIVERSAL DE SEGUROS, C. POR A., Appellee.
No. 77-240.
District Court of Appeal of Florida, Third District.
May 23, 1978.
Rehearing Denied June 28, 1978.
*517 Donald F. Geffner, Miami, for appellant.
Gilbride & Heller, Miami, for appellee.
Before HAVERFIELD, C.J., and NATHAN and HUBBART, JJ.
HAVERFIELD, Chief Judge.
Antillean Marine Shipping, defendant bailee, appeals a final summary judgment in favor of plaintiff insurer in this action for damages for negligent loss of cargo.
Editorial Padilla, C. Por A.[1] contracted with Antillean Marine Shipping (hereinafter Antillean) for the transport of four glassine bales of paper from Miami to Santo Domingo. The contract was evidenced by a bill of lading, the reverse side of which in fine print provided in part:
"1. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the Carrier . .." [Emphasis Supplied]
On the front side of the bill of lading Antillean typed in bold print the following clause:
"CARRIERS AND/OR VESSEL'S RESPONSIBILITY AND/OR LIABILITY CEASES AT END OF SHIP'S TACKLE AT PORT OF DISCHARGE."
Antillean received the paper from the shipper, Pan American Paper Converting, Inc.[2] and then had the paper loaded on board the ship M/V William Express which set sail for Santo Domingo. However, on the next day the ship ran aground and returned to Miami where the paper was unloaded and placed in Antillean's warehouse. Subsequently, Antillean was unable to account for the paper. Plaintiff, La Universal De Seguros C. Por A. (hereinafter Universal), the insurer of Editorial Padilla, C. Por A., paid Editorial $8,354.37, the full value of the lost paper. Universal then instituted the present action against Antillean for recovery of the above amount for the negligent loss of the paper. Antillean answered that under the Carriage of Goods by Sea Act (46 U.S.Code §§ 1300-1315) incorporated in the bill of lading, it could not be held responsible for the loss or in the alternative that any liability was limited to $500 per package (or $2,000 in total). Following pretrial discovery, Universal filed a motion for summary judgment which was granted after oral argument of counsel. Final summary judgment for $8,354.34 plus interest and costs was entered for Universal and Antillean appeals. We affirm for the following reasons:
First, when the ship returned to Miami and the paper was placed in Antillean's warehouse, the limitation of liability provision in the bill of lading was thereby terminated and Antillean having maintained custody of the paper was then exposed to full liability as a common law bailee. See Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc., 562 F.2d 938 (5th Cir.1977). Antillean admitted that it was unable to account for the disappearance of the paper and failed to rebut those allegations of negligence asserted by Universal. Thus, the trial court was correct in entering summary judgment for Universal. See Marine Office-Appleton & C. Corp. v. Aqua Dynam., Inc., 295 So.2d 370 (Fla. 3d DCA 1974).
Second, assuming arguendo the bill of lading is applicable, Antillean still cannot prevail. A bill of lading is a contract of adhesion to be strictly construed against the carrier. Leather's Best, Inc. v. S.S. Mormaclynx, 313 F. Supp. 1373 (E.D.New York 1970). If a clause in a bill *518 of lading is conflicting with another clause thereby creating an ambiguity, the ambiguity is to be resolved against the party preparing the instrument. Associated Metals & Minerals v. M/V Vishva Shobha, 530 F.2d 714 (6th Cir.1976). Another well established rule of construction is when a contract is partly printed and partly written, the writing controls. Burdines, Inc. v. Pan-Atlantic Steamship Corp., 199 F.2d 571 (5th Cir.1952). The printed clause on the reverse side of the bill of lading (set out above) is in conflict with the typed provision on the front side (also set out above). Applying the above construction principles, this front clause is controlling. Cf. Burdines, Inc., supra and Hellenic Lines, Limited v. Embassy of Pakistan, 467 F.2d 1150 (2d Cir.1972). Under the language thereof, the contract terminated when the paper was returned to Antillean's warehouse in Miami and, therefore, the limitation of liability under the Carriage of Goods by Sea Act incorporated therein was not applicable. Cf. Zajicek v. United Fruit Company, 459 F.2d 395 (5th Cir.1972) and Federal Ins. Co. v. American Export Lines, Inc., 113 F. Supp. 540 (S.D.New York 1953).
Affirmed.
NOTES
[1] not a party to this action
[2] not a party to this action