On Motions for Clarification and Rehearing

NESBITT, Judge.
We grant the appellant’s motion for clarification and deny both parties’ motions for rehearing; vacate our previous opinion and replace it with the following:
Stella Kalman appeals from the grant of a final summary judgment on her claims against appellees for destruction of her household goods. We reverse.
Kalman contracted with North American Van Lines (NAVL) to move her household goods from Miami to California. NAVL issued her an interstate bill of lading through its agent, appellees. In the bill, Kalman declared the value of her goods to be $3,000. Six months later, appellees informed Kalman that, in accordance with tariff requirements and Interstate Commerce Commission regulations, her goods had been moved from storage-in-transit to permanent storage, that her monthly payments would increase $34.00, and that her insurance coverage would increase to $5,000. The furniture and other effects were ultimately stored in appellees’ warehouse for four years awaiting Kalman's delivery authorization. During storage, the goods were destroyed due to water damage, mildew, and insect infestation. When Kalman requested delivery, she was not informed of any problem with her goods but was told she had to pay additional costs, which she did pay. After the goods were not delivered when expected, she flew to Miami and proceeded to the warehouse with another mover but was denied possession of her property for two days. The goods were subsequently released to her during a second trip to Miami some three months later. Kalman sued NAVL, in addition to the appellees. NAVL was granted summary judgment on the basis that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707 (1987), limited its liability to the $3,000 release rate set forth in the bill of lading. Appellees then filed a motion for summary judgment claiming that since they were disclosed agents of NAVL, they were either exempt from liability, or in the alternative, the Carmack Amendment also limited their liability to the value of the goods stated on the bill of lading. The motion was granted and Kalman appeals.
While the appellees are correct in asserting that the Carmack Amendment is broad and preempts state and common law as it applies to interstate carrier liability, they fail to acknowledge that they entered *396 into a separate contract for permanent storage with Kalman six months after the initial temporary storage period. Thus, they are not protected from liability for any wrongdoing or breach of contract which might have occurred during the time of permanent storage. Therefore, the entry of summary judgment was improper.
According to the Interstate Commerce Commission regulations governing the liability of household good carriers, 49 C.F.R. 1056.12(c) (1987), the storage-in-transit period, during which the carrier holds the goods pending transport, shall continue for “the maximum period of time provided in the carrier’s tariff,” which is 180 days in the case of NAVL. That regulation goes on to state that it is the responsibility of the carrier to notify the shipper in writing that after that time, “the liability of the carrier shall terminate and the property shall be subject to the rules, regulations, and charges of the warehouseman” and that “[fjailure or refusal of a carrier to notify the shipper in accordance with the foregoing shall automatically effect a continuance of carrier liability....” Nowhere does this regulation state that the warehouseman is exempt from liability for any misfeasance or malfeasance on his part while the goods are held in permanent storage. The regulation simply states that the carrier’s liability will continue under such circumstances.
In Ms. Kalman’s case, she received a letter from appellees six months after her goods were stored notifying her that her property had been moved to permanent storage and that her storage payments, as well as her insurance protection, would thereafter increase. It is clear that the parties entered into a new contract for storage at that time which was separate and distinct from the terms of the bill of lading. See Antillean Marine Shipping Corp. v. La Universal de Seguros, 359 So.2d 516 (Fla. 3d DCA 1978). Consequently, Kalman’s claims against the warehouse-men are not preempted by the bill of lading. See Allied Van Lines v. Bratton, 351 So.2d 344 (Fla.1977); North American Van Lines, Inc. v. Roper, 429 So.2d 750 (Fla. 1st DCA 1983).
Because this summary judgment was entered solely on the finding that, based on the bill of lading, Kalman had no separate claim against appellees, our decision here is limited to holding that the appellees, as warehousers of Kalman’s goods, entered into a separate contract with appellant for permanent storage apart from the terms of the bill of lading. Therefore, because there remains a genuine issue of fact as to whether the appellees breached their contract with Kalman, it was improper to enter summary judgment on that count. However, it is premature for us to make a merits determination on appellant’s claims for breach of bailment, fraud and deceit, and conversion. We do hold, as a matter of law, that Kalman cannot prevail on her claim of civil theft based on this court’s holding in Rosen v. Marlin, 486 So.2d 623 (Fla. 3d DCA) review denied, 494 So.2d 1151 (Fla.1986) that there can be no statutory civil theft where there is a contractual relationship between the parties.
On motions for rehearing, we address appellees’ allegation, citing Fomel v. Florida East Coast Ry., 61 So. 194 (Fla.1913), that the subject goods cannot be deemed interstate in nature for purposes of NAVL’s liability and intrastate in nature for purposes of appellees’ liability. We reject the argument. Fomel does not deal with the issue before us of a separate and distinct contract entered into for the permanent storage of goods. Therefore, that case is not controlling.
Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.